THE PONTIAC, OXFORD & PORT AUSTIN RAILROAD COM-
PANY v. ROBERT H. KING.

*Railroad aid note—Performance of conditions.*

The maker of a note given in aid of the construction of a rail-
road, the payment of which is conditioned upon the running of
cars on the road by a certain date, becomes liable for such pay-
ment if the railroad company begins to run construction trains
over the road by the date named, although the road is not
ballasted nor in fit condition for use, and freight and passenger
trains are not run thereon, until some months after said date.

Error to Tuscola. (Beach, J.) Argued November 11,
1887. Decided January 5, 1888.

Assumpsit on railroad aid note. Plaintiff brings error.
Reversed. The facts are stated in the opinion.

*Aug. C. Baldwin,* for appellant.

*Black & Corcoran (Black, Moran, Wilkins & Gray,* of
counsel), for defendant.

SHERWOOD, C. J. The plaintiff declares in assumpsit upon
a note of which the following is a copy:

"$150.00.                    NEWBERRY, October 8, 1881.
"For value received, and to aid the Pontiac, Oxford &
Port Austin Railroad Co. to construct its road, I hereby
promise and agree to pay to the order of the said company
the sum of one hundred and fifty dollars, within ten days
after the cars shall run upon said road to within one-third of
a mile of Newberry: *Provided* the same is done within 18
months from date; otherwise to be null and void.
                              "ROBERT H. KING."

The common counts are also added. Plea, general issue.
This cause was tried in the Tuscola circuit by jury before
Judge Beach. On the trial the plaintiff, besides offering the

note in evidence, gave testimony tending to show that, in the fall and winter of 1881 and 1882, the company proceeded to construct its road, beginning at Caseville, the northern terminus, and working south towards Newberry (now Kingston), until the road was graded, tied, and ironed through Kingston to Clifford, several miles south, and about 46 miles south of Caseville. The track ran and was laid within 50 rods of the principal business street in Kingston on the first day of April, 1883, and was continued south, and completed to Pontiac in the month of July thereafter.

The testimony further tended to show that construction trains began to run daily, passing and repassing over the road through Kingston, before April 5, 1883, but the road was not ballasted nor completed through Kingston until after the fifteenth of April.

Plaintiff also gave evidence of the incorporation of the company, and it was also conceded that the road was not in fit condition for use, and freight and passenger trains did not begin to run until October 1, 1883. By the amended articles of incorporation, it appeared that the northern termination of the road had been changed from Port Austin to Caseville, in the county of Huron.

The defendant gave testimony tending to show that during the summer of 1883, and until October 1, the defendant was a merchant, and had to haul his freight into Kingston, by wagon.

The foregoing is the substance of all the testimony given upon the points raised in the case.

Counsel for the plaintiff asked the court to charge the jury:

"1. By the terms of the note in this case, if the cars on plaintiff's road were running within the time prescribed, April 11, 1883, to within one-third of a mile of Newberry, the plaintiff would be entitled to recover.

"2. That it was not necessary that the plaintiff's road should be completed its entire length, or,—

" 3. That cars should be running its entire length.

" 4. If the railroad track was laid from one of its *termini* within the time, and within the distance of Newberry, and construction trains were passing over it from Caseville, the northern terminus, to Newberry, and beyond that place southerly, within 18 months from October 8, 1881, then the plaintiff would be entitled to recover the amount due upon the note, and interest, even if the road was not ballasted and completed."

These requests were all refused, and the refusals severally excepted to, and the circuit judge thereupon charged the jury as follows:

" On the part of the plaintiff it is admitted that the road was not in such condition eighteen months from date that regular traffic had taken place upon it, or could be done upon the road.

" The plaintiff insists, as a matter of law, that the simple running of construction trains over the road was a compliance with the contract.

" And it also says that the question is purely a question of law as to whether it was a compliance with the contract or not. There were no passenger or freight cars run upon the road, and the road was not open for general traffic.

" I charge you, as a matter of law, as the construction of this contract is for the court, that a reasonable and fair construction of this contract is that eighteen months from the date of the note the road was to be in such a condition that it was open for passenger and freight traffic, and it is admitted by the plaintiff that it was not in such a condition; consesequently I charge you to render a verdict of no cause of action, without leaving your seats."

The verdict was taken, and judgment entered thereon, as directed by the court.

The exceptions to the refusal of the court to give the plaintiff's requests to charge, and the direction given in the charge, are relied upon here for a reversal.

We think the circuit court erred in his rulings, and in the construction he gave to the contract between the parties. The promise of the plaintiff was not to build and perfect its road-bed and track, or its rolling stock and equipments,

within the 18 months, to the point named, but to construct within that time its road-bed and track, and so far perfect the same that cars could be run over the road, and actually make such run within the time stated. This it did, and the subsequent completion of the road is evidence undisputed of the good faith with which it was done. If anything more was contemplated or required by the defendant when he gave his note, he failed to have it stated in his contract with the plaintiff.

It is a matter of common knowledge that much usually remains to be done in completing a railroad track, and in making it safe for regular freight and passenger business, long after the cars have commenced running upon it. It was to aid in its construction that this note was in part given. The road was a continuous one, and to secure its construction to Kingston within a certain time was the principal object the defendant had in view at the time he gave the note. Once there, he knew it would not remain long unfit for use. With a track so far completed as to admit of cars passing over for a distance of 40 miles, no company would fail to use it in its regular business at the earliest possible moment.

We think the company, after receiving this note, in its subsequent action, did all that either party could have reasonably expected or intended at the time it was made, and we should not, in giving construction to the contract, add any new conditions to be performed by either party; and this it seems quite clear we should do were we to adopt the construction asked for by the defendant's counsel. The requests of counsel for the plaintiff should have been given, and the cause submitted to the jury. *Swartwout v. Mich. Air Line R. R. Co.*, 24 Mich. 389; *Mich., Midland, etc., R. R. Co. v. Bacon*, 33 Id. 466; *Tower v. Detroit, L. & L. M. R. R. Co.*, 34 Id. 328; *Stowell v. Stowell*, 45 Id. 364 (8 N. W. Rep. 70).

The judgment must be reversed, and a new trial granted.

CHAMPLIN and MORSE, JJ., concurred. CAMPBELL, J., did not sit.